# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

BRIAN A. PATTERSON,

               Petitioner,

v.

MICHAEL MEISNER,

               Respondent.

Case No. 16-CV-745-JPS

**ORDER**

## 1. INTRODUCTION

Following trial in Milwaukee County Circuit Court, a jury convicted Brian A. Patterson ("Petitioner") of first-degree reckless homicide.[1] ECF No. 15 at 2; ECF No. 15-1 at 41. Petitioner filed a direct appeal of his conviction and of the circuit court's denial of his preliminary postconviction motion with the Wisconsin Court of Appeals pursuant to Wis. Stat. § 809.30, and then sought review with the Wisconsin Supreme Court. ECF No. 15 at 3–4, ECF No. 15-1 at 33–40; *State v. Patterson*, 855 N.W.2d 491 (Table), 2014 WL 3582732 (Wis. Ct. App. July 22, 2014), *review denied by* 857 N.W.2d 617 (Table), (Wis. 2014). On June 22, 2015, the United States Supreme Court denied Petitioner's petition for a writ of certiorari. *See Brian A. Patterson v. Wisconsin*, 576 U.S. 1040 (2015) (mem.).

In June 2016, Petitioner filed both a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and a motion requesting that the Court stay his petition and hold it in abeyance while he exhausted his state court

---

[1] *See Wisconsin v. Patterson*, 2010CF000599 (Milwaukee Cnty. Cir. Ct.) *available at* https://wcca.wicourts.gov (last visited Sept. 26, 2022).

remedies. ECF Nos. 1, 3. Magistrate Judge David E. Jones granted Petitioner's motion to stay and instructed Petitioner to return to federal court to pursue his habeas petition "within 30 days of the full exhaustion of his claims in state court." ECF No. 9 at 3. In September 2019, Magistrate Judge Jones administratively closed Petitioner's case and directed Petitioner to ask the Court to lift the stay and re-open his case once Petitioner's state court litigation was complete. ECF No. 12.

On July 17, 2020, Petitioner filed a motion to vacate the stay and abeyance, ECF No. 18, and on September 21, 2020, a motion to both reopen his case and for leave to file an amended petition, ECF No. 21. Petitioner's proposed amended petition had been previously filed. ECF No. 15. On February 22, 2021, the Court issued an order granting Petitioner's motion to reopen his case and his motion for leave to file his amended petition, and denying Petitioner's motion to vacate the stay and abeyance as moot. *Id.* In the same order, the Court screened Petitioner's amended petition, determining that Petitioner had properly exhausted and raised eight grounds for relief. *Id.*

On September 20, 2021, after Respondent Michael Meisner ("Respondent") filed his answer, the Court set a briefing schedule on Petitioner's amended petition. ECF No. 39. Thereafter, on November 12, 2021, Petitioner filed a motion for leave to file an oversized moving brief, attaching his proposed moving brief thereto. ECF No. 41. The same day, Petitioner filed a motion for immediate release on personal recognizance bond pending the Court's resolution of his amended petition. ECF No. 42. On January 21, 2022 and February 10, 2022, respectively, Respondent filed two motions for extensions of time to file his opposition brief. ECF Nos. 44, 45. On April 11, 2022, Petitioner filed a motion for extension of time to file

his reply brief, and on April 15, 2022, Petitioner filed a motion for leave to file an oversized reply brief, attaching his proposed reply brief thereto. ECF Nos. 47, 48. The Court will grant Petitioner's motions for leave to file oversized moving and reply briefs and has considered the briefs attached to the respective motions in reaching its decision, as set forth herein. ECF Nos. 41, 48. The Court will further retroactively grant Petitioner's and Respondent's motions for extensions of time. ECF Nos. 44, 45, 47. Finally, the Court will deny as moot Petitioner's emergency motion for release on personal recognizance bond. ECF No. 42. For the reasons explained below, the Court determines that Petitioner's amended petition, ECF No. 15, must be denied.

2.      **BACKGROUND**[2]

On February 6, 2010, Petitioner was charged with first-degree intentional homicide for the shooting death of his cousin, Joseph McGowan ("McGowan"). ECF No. 30-9 at 2. Petitioner pleaded not guilty, and the case proceeded to trial. *Id.* At trial, Petitioner testified on his own behalf that he acted in self-defense. *Id.* Specifically, Petitioner testified that tensions had been high between McGowan and himself in the days prior to the shooting because McGowan thought Petitioner owed McGowan's girlfriend, Tiffany Stephens ("Stephens"), money. *Id.* at 3. Additionally, Petitioner had previously witnessed McGowan shoot another man, and McGowan had pulled a gun on Petitioner before. *Id.*

On the day of the shooting, Petitioner arrived home to find Stephens on his porch, with McGowan waiting in the car. *Id.* at 2. Petitioner then

---

[2]The majority of the underlying facts in this Order come from the Wisconsin Court of Appeals' recitation. ECF No. 30-9; *Patterson*, 2014 WL 3582732.

noticed McGowan exit his car and aggressively walk in Petitioner's direction, while cussing and demanding money. *Id.* Petitioner overheard McGowan tell another cousin that McGowan was going to "shoot the house up" if Petitioner did not pay. *Id.* Petitioner told McGowan that "if [he] shoots [his] house up, expect to get shot in return." *Id.* Petitioner and McGowan then returned to their vehicles and ended up face-to-face. *Id.* at 3. Petitioner observed McGowan reach under the seat of his car. *Id.* Believing that McGowan was reaching for a gun, Petitioner testified that he pulled his own gun from his pocket and warned McGowan that he would shoot McGowan if he did not stop advancing towards him. *Id.* Petitioner then fired four or five shots because McGowan continued towards him. *Id.* However, Petitioner testified that he never actually intended to kill McGowan; he intended just to halt him. *Id.* Moreover, Petitioner testified that he shot McGowan with his non-dominant hand and "did not have time to actually aim the gun at McGowan, but rather, just reacted to the perceived threat and started shooting." *Id.*

At the close of evidence, the State moved to instruct the jury on the offense of first-degree reckless homicide in addition to the original charge of first-degree intentional homicide. *Id.* Petitioner's counsel objected, which objection the circuit court overruled. *Id.* The jury found Petitioner guilty of first-degree reckless homicide; Petitioner was sentenced to 35 years of imprisonment, consisting of 25 years of initial confinement and 10 years of extended supervision. *Id.* at 4. Thereafter, Petitioner filed a postconviction motion for a new trial under Wis. Stat. § 809.30, arguing that the circuit court committed plain error when it failed to properly instruct the jury on the State's burden of proof for self-defense to the charge of first-degree reckless homicide. *Id.*; ECF No. 30-4 at 1. Specifically, Petitioner averred

that, because he presented evidence "that he actually believed that deadly force was necessary to terminate an unlawful interference with his person," he could not have been convicted of first-degree reckless homicide. ECF No. 30-9 at 4. In the same vein, Petitioner argued that the jury instructions improperly shifted the burden of proof to him to establish that he was acting reasonably in self-defense. *Id.* The circuit court denied the motion after examining the jury instructions, finding that the jury was properly instructed on self-defense with respect to first-degree reckless homicide and the State's overall burden of proof; Petitioner thereafter appealed his conviction and the circuit court's denial of the motion to the Wisconsin Court of Appeals. ECF No. 30-4 at 2; ECF No. 30-9 at 4.

On appeal, Petitioner argued that "(1) the evidence was insufficient to convict him of first-degree reckless homicide; (2) the circuit court erred in allowing the jury to consider the lesser included offense of first-degree reckless homicide; (3) the circuit court erred in denying his motion for a new trial on the grounds that the jury instruction on first-degree reckless homicide was plain error; and (4) the circuit court erroneously exercised its sentencing discretion." ECF No. 30-9 at 4. The Wisconsin Court of Appeals affirmed the circuit court on all grounds. *Id.* at 8. On November 13, 2014, the Wisconsin Supreme Court denied review. ECF No. 30-10; *Patterson*, 857 N.W.2d 617. On June 22, 2015, the United States Supreme Court denied Petitioner's petition for a writ of certiorari. ECF No. 30-11; *Patterson*, 576 U.S. 1040.

On January 22, 2016, Petitioner filed a pro se postconviction motion for immediate release under Wis. Stat. § 974.06 or, alternatively, for a new trial. ECF No. 30-12. Therein, Petitioner argued that the claims subject to the motion were not procedurally barred because they were "clearly stronger"

than those raised in his original postconviction motion; thus, additionally, his postconviction counsel had been ineffective for failing to raise them. ECF No. 30-13 at 2; ECF No. 30-18 at 3; *see also State v. Romero-Georgana*, 849 N.W.2d 668, 679 (Wis. 2014) (to newly raise issues that could have been raised on direct appeal in a motion for postconviction relief, a petitioner must "show that a particular nonfrivolous issue was *clearly stronger* than issues" that were presented on direct appeal) (citations omitted) (emphasis in original).

The circuit court characterized the claims as: (1) Petitioner is actually innocent because the jury acquitted him of second-degree intentional homicide; (2) the State had the burden of disproving self-defense; (3) the jury instructions denied Petitioner his rights to self-defense, to due process, to present a defense, to jury unanimity, to verdict specificity, and to double jeopardy; (4) Wis. Stat. §§ 940.05 (second-degree reckless homicide) and 940.02 (first-degree reckless homicide) are unconstitutionally vague; (5) the jury instructions and verdict unconstitutionally intertwined a self-defense acquittal with a conviction; (6) Wis. Stat. § 940.02 "with self-defense actual beliefs is void for lack of subject matter jurisdiction"; (7) the court caused two structural errors by arbitrarily finding Petitioner indigent and appointing counsel; and (8) Petitioner's trial and postconviction counsel were ineffective in a variety of ways. ECF No. 30-13 at 2; *see also* ECF No. 33-12 at 13 (raising claims for ineffective assistance of trial and postconviction counsel). The circuit court denied relief on all grounds. *Id.* at 3. The Wisconsin Court of Appeals summarily affirmed on August 28, 2019, ECF No. 30-18, and the Wisconsin Supreme Court denied review on June 16, 2020. ECF No. 30-19.

On May 11, 2016, Petitioner filed a second pro se postconviction motion, in which he argued that his right to select counsel of his own choosing was violated, and that the circuit court's order appointing counsel violated his due process rights and should be vacated. ECF No. 30-20. Petitioner additionally requested that the circuit court disqualify itself from deciding the motion. *Id.* The circuit court denied relief on all grounds, ECF No. 30-21, and the Wisconsin Court of Appeals affirmed on August 10, 2017. ECF No. 30-25. The Wisconsin Supreme Court denied review on January 8, 2018. ECF No. 30-26. The instant amended petition for writ of habeas corpus followed. ECF No. 15. The amended petition lists eight grounds for relief, which as the Court noted in its screening order, ECF No. 25 at 4, are difficult to parse.

The Court summarizes Petitioner's eight grounds for relief[3] as follows: (1) because Petitioner was acquitted of first- and second- degree intentional homicide, there was insufficient evidence to support Petitioner's conviction for first-degree reckless homicide, and the circuit court treated Wis. Stat. § 940.05 (second-degree intentional homicide) and Wis. Stat. § 940.02 (first-degree reckless homicide) "disjunctively," thus violating his due process rights and right against double jeopardy; (2) the jury's decision not to convict on the first-degree intentional homicide charge means that the jurors were not persuaded that the State negated Petitioner's "perfect self-defense" beyond a reasonable doubt, in violation of his due process rights; (3) the jury instructions for the Wis. Stat. § 940.02 charge for first-degree reckless homicide omitted self-defense elements, thus denying

_____

[3] Each listed ground will hereinafter be referred to as "Ground One," "Ground Two," "Ground Three," and so on.

Petitioner due process, a jury trial, and a unanimous verdict; (4) the jury was improperly instructed as to self-defense, which denied Petitioner due process and a jury trial, because the instructions omitted that it was the State's burden to disprove self-defense beyond a reasonable doubt; (5) the circuit court's appointment of counsel prior to trial deprived Petitioner of his constitutional rights to due process, self-representation, counsel of choice, and a fair judge; (6) Petitioner was denied counsel, the right to present a defense, and due process when the circuit court additionally instructed the jury on Wis. Stat. § 940.02 (first-degree reckless homicide) at the close of evidence; (7) ineffective assistance of trial counsel; and (8) ineffective assistance of postconviction counsel. ECF No. 15-1 at 3–13; ECF No. 25.

### 3. LEGAL STANDARD

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. The federal habeas corpus statute "permits a federal court to entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(a)). Importantly, federal habeas review is not available, and federal courts lack jurisdiction over a petition, where "the state court rests its decision on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir. 2002) (citing *Stewart v. Smith*, 536 U.S. 856, 860–61 (2002)).

Where a federal habeas court does have jurisdiction, "[a]s amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant

an application for a writ of habeas corpus on behalf of a state prisoner." *Id.* As a result, the Court may grant a writ of habeas corpus only if the state court's decision with respect to that claim was: (1) "contrary to . . . clearly established federal law, as determined by the Supreme Court of the United States"; (2) "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1–2); *see also Conner v. McBride*, 375 F.3d 643, 648–49 (7th Cir. 2004). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181. The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). In Petitioner's case, that would be the Wisconsin Court of Appeals' July 22, 2014, August 10, 2017, and August 28, 2019 opinions. *See supra* Section 2.

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005). Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637

F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably. *Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even 'clear error' will not suffice.'") (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

Indeed, the habeas petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

4.    **ANALYSIS**

4.1    **Grounds Five and Six**

Respondent argues that Grounds Five and Six are procedurally barred because the Wisconsin Court of Appeals relied upon "a state procedural ground that is independent of the federal question and adequate to support the judgment." ECF No. 46 at 22–25 (citing *Perry*, 308

F.3d at 690). As to Ground Five, Petitioner raised denial of his right to self-representation in his first pro se postconviction motion. ECF No. 30-18 at 5. Petitioner raised denial of his rights to choose his own counsel and to due process in his second pro se postconviction motion. *Id.* Respondent's argument rests upon the Wisconsin Court of Appeals' citations in its order on the first pro se postconviction motion to *State v. Escalona-Naranjo*, 517 N.W.2d 157 (Wis. 1994) and *Romero-Georgana*, 849 N.W.2d 668. ECF No. 46 (citing ECF No. 30-18 at 4–7). Together, these decisions hold that "[w]ithout a sufficient reason, a defendant may not bring a claim in a § 974.06 motion if that claim could have been raised in a previously filed [§] 974.02 motion and/or on direct appeal." *Romero-Georgana*, 849 N.W.2d at 672 (quoting *Escalona*, 517 N.W.2d at 159). Such a "sufficient reason" requires a demonstration that the claims a defendant seeks to raise are "clearly stronger" than the claims that were brought on direct appeal. *Id.* at 679. As Respondent notes, an *Escalona-Romero* procedural disposition is an adequate and independent state ground that bars federal habeas review. *Perry*, 308 F.3d at 690.

As discussed, upon consideration of Petitioner's first pro se postconviction motion, the Wisconsin Court of Appeals cited and applied *Escalona* and *Romero* to Petitioner's claim of denial of his right to self-representation. ECF No. 30-18 at 4, 6, 7. However, upon consideration of Petitioner's second pro se postconviction motion, the Wisconsin Court of Appeals did not cite or apply either *Escalona* or *Romero* to Petitioner's claims of denial of his rights to choose his own counsel and to due process. ECF No. 30-25. Moreover, as Petitioner contends, even the decision that does apply *Escalona* and *Romero* goes on to briefly consider the merits of the claim underlying Ground Five. The same is true for Ground Six, which Petitioner

raised only in his first pro se postconviction motion, and which involves Petitioner's claim that the circuit court's jury instructions on Wis. Stat. § 940.02 (first-degree reckless homicide) at the close of evidence violated his rights to present a defense and due process. While the Wisconsin Court of Appeals applied state law to its analysis of the merits of the claims underlying both Grounds Five and Six, the Court cannot find that the application is wholly independent of federal due process law sufficient to preclude federal habeas review. Because the Wisconsin Court of Appeals did not apply federal law to either Ground, the Court assesses whether the Wisconsin Court of Appeals' holdings are contrary to clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1–2).

As to that portion of Ground Five pertaining to Petitioner's claim that he was denied his right to self-representation, the Wisconsin Court of Appeals determined, reviewing the trial record, that "[b]ecause [Petitioner] decided to continue with appointed counsel when given the option to decide how to proceed," the circuit court's appointment of counsel was not erroneous. ECF No. 30-18 at 6. As to that portion of Ground Five relating to Petitioner's claim that he was denied his rights to choose his own counsel and to due process, the Wisconsin Court of Appeals affirmed the circuit court, again after reviewing the trial record, that Petitioner's rights were not violated because he was sitting in court when the court made the appointment, had the opportunity to object and did not, and then proceeded to avail himself of his court-appointed counsel's services. ECF No. 30-25 at 4. Regarding Petitioner's claim that the decision appointing him counsel was made before he had a chance to be heard in open court on August 30, 2010, the Wisconsin Court of Appeals held that there was no due

process violation, finding that "while the circuit court apparently signed the order appointing Attorney Bowe on August 19, 2010, the order was not entered—that is, filed with the clerk of court—. . . until the date of the status conference, August 30, 2010." *Id.*

The Court determines that the Wisconsin Court of Appeals' holding does not run contrary to clearly established federal law. "[D]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Due process does not, in all circumstances, require a "pretermination hearing as a matter of constitutional right," provided that a person is afforded notice and a right to be heard at some point. *Id.* at 333. Indeed, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (citations omitted). Because the order appointing counsel was not entered until August 30, 2010, after Petitioner was afforded the chance to be heard as to his right to select alternate counsel or represent himself, the Court does not find a due process violation, nor does it find an "unconstitutional process" prior to August 30, 2010, as Petitioner argues. ECF No. 48-1 at 22. Consequently, the Court will deny Ground Five.

As to Ground Six, the Wisconsin Court of Appeals held, applying Wisconsin law, that Petitioner had sufficient notice to both present a defense and to be heard, thus supporting due process, as to the circuit court's jury instruction regarding the lesser offense of first-degree reckless homicide at the close of evidence. ECF No. 30-18 at 6. This is because, under Wisconsin law, "[w]hen a defendant is charged with a crime[,] he is automatically put on notice that he is subject to an alternative conviction of

any lesser-included crime; the whole contains its parts." *Id.* (quoting *Kirby v. State*, 272 N.W.2d 113, 116 (Wis. Ct. App. 1978)).

The Wisconsin Court of Appeals' decision is not contrary to clearly established federal law. As in *Kirby*, the United States Supreme Court has adopted an elements analysis to determine whether jury instructions as to a lesser offense, when a defendant is charged with a higher offense, give sufficient "notice to the defendant that he may be convicted on either charge." *Schmuck v. United States*, 489 U.S. 705, 718 (1989). In so holding, the *Schmuck* Court turned to the Court's decision in *Stevenson v. United States*, 162 U.S. 313 (1896), where the Court carefully compared "the statutory elements of murder and manslaughter to determine if the latter was a lesser included offense of the former." *Id.* (citing *Stevenson*, 162 U.S. 313). Importantly, the *Stevenson* Court held that, despite the variance in the requisite mental condition between common law murder and manslaughter, "the proof to show either is of the same nature, viz. the circumstances leading up to and surrounding the killing." 162 U.S. at 320. In other words, proof of homicide necessarily reveals the facts under which the killing was effectuated, and from there, the jury must determine the defendant's state of mind—whether that be intent or a state of mind akin to recklessness. *Id.* Consequently, the Court determines that neither Petitioner's right to due process, nor his right to present a defense, was violated by the circuit court's instruction on first-degree reckless homicide. The Court will accordingly deny Ground Six.

### 4.2 Grounds Three and Four

Respondent argues that Grounds Three and Four are procedurally defaulted because Petitioner did not raise constitutional due process claims regarding the jury instructions to the circuit court, and raised this argument

for the first time only before the Wisconsin Court of Appeals. ECF No. 46 at 20–21. In support of his argument, Respondent cites to a portion of Petitioner's first appellate brief, wherein Petitioner argued, "[D]ue process is implicated by the failure of the court to instruct a jury that it is the state's burden to prove that the defendant did not have a mitigated state of mind." ECF No. 30-5 at 32–33 (citing *Falconer v. Lane*, 905 F.2d 1129, 1131 (7th Cir. 1990)). The Court disagrees with Respondent that the due process claim regarding the jury instructions is procedurally defaulted, as the exact same quote to which Respondent cites also appears in Petitioner's initial Wis. Stat. § 809.30 postconviction brief to the circuit court. ECF No. 30-3 at 6.

Despite Petitioner having properly exhausted and raised (albeit briefly) constitutional due process regarding the jury instructions, the Wisconsin Court of Appeals did not apply federal law or consider due process in determining that the circuit court did not commit plain error in its issuance of the jury instructions. ECF No. 30-9 at 7–8. Instead, the Wisconsin Court of Appeals declined review because the Wisconsin Supreme Court has held that Wis. Stat. § 805.13(3) "prohibits [it] from reviewing unobjected-to jury instructions," and Petitioner conceded that he did not object to the instructions. ECF No. 30-9 at 8. The Wisconsin Court of Appeals further declined to exercise its discretionary reversal power to consider the issue. *Id.*

This District has held that a state court's decision to abstain from considering an issue on the basis of Section 805.13(3)—regarding waiver resulting from the failure to object to jury instructions—is "an adequate and independent state law reason for deciding against" a habeas petitioner, which precludes federal habeas review. *McCarville v. Baldwin*, 828 F. Supp. 626, 629 (E.D. Wis. 1993) ("The purpose of requiring an objection is to give

the trial court an opportunity to correct the error."). As already explained in this Order, a federal habeas court can consider a petition only when "the state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Id.* As in *McCarville*, the Wisconsin Court of Appeals did not consider federal law at all—let alone primarily—when declining to decide the claim on the basis of Section 805.13(3). ECF No. 30-9 at 8.

Nonetheless, and in the interests of finality as well as the effect that the merits of the argument has on Petitioner's remaining Grounds, the Court briefly addresses Petitioner's due process argument regarding the jury instructions. Because the Wisconsin Court of Appeals did not apply federal law in deciding the claim, the Court assesses whether the Wisconsin Court of Appeals' determination that the jury instructions were not erroneous is contrary to clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1–2).

The Wisconsin legislature has opted to place the burden on the State to disprove self-defense beyond a reasonable doubt. *See, e.g.*, Wis. J-Crim. 1016. However, while the United States Supreme Court has delegated to the respective state legislatures the decision to reallocate the burden of proof to the State as to affirmative defenses, "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required." *Patterson v. New York*, 432 U.S. 197, 210–11 (1977). Indeed, the United States Supreme Court has made clear that

> We thus decline to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused.

> Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch.

*Id.*

Separately, and without a doubt, the United States Supreme Court has long held that the "Due Process Clause requires the State in criminal prosecutions to prove guilt beyond a reasonable doubt." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). But in *Patterson*, the United States Supreme Court made equally clear that the due process mandate of proof beyond a reasonable doubt *as to the elements of the offense(s)* is separate from the burden of proof *as to an affirmative defense*, the latter of which the state legislatures are free to delegate as they please, subject to the constitutional limit that, *inter alia*, a legislature cannot declare an individual presumptively guilty of a crime. 432 U.S. at 210–11. In so holding, the *Patterson* Court reiterated that it would not "disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements in the definition of the offense of which the defendant is charged." *Id.* at 210. Further, the fact that "a majority of States have now assumed the burden of disproving affirmative defenses for whatever reasons does not mean that those States that strike a different balance are in violation of the Constitution." *Id.* at 211.

In his briefing, Petitioner confuses these distinct burdens of proof and applications of due process. For example, Petitioner cites *In re Winship*, 397 U.S. 358 (1970), which holds that juveniles, like adults, are constitutionally entitled to proof of all elements of an offense beyond a reasonable doubt. Conversely, here, Petitioner's argument involves the

burden of proof as to *an affirmative defense*. In this case, the State's burden of proof beyond a reasonable doubt as to *the elements of the offense* was not shifted. Indeed, the circuit court instructed the jury at least twice that it was the State's burden to prove all facts and elements of the offenses upon which the jury was instructed beyond a reasonable doubt. ECF No. 30-35 at 115, 118.

This case is further unlike *Falconer*, 905 F.2d 1129, which Petitioner raised before the state courts to support his due process argument. There, the instructions were constitutionally inadequate on due process grounds because "the jury was not told that if it found that [the petitioner] had acted with some lesser level of justification it could not convict her of murder." *Id.* at 1133. Conversely, here, the jury was specifically instructed as to the privilege of self-defense, and that "the law of self-defense is that the defendant *is not guilty of any homicide offense* if the defendant reasonably believed that he was preventing or terminating an unlawful interreference with his person and reasonably believed the force was necessary to prevent death or great bodily harm to himself." ECF No. 30-35 at 115–16 (emphasis added). *Falconer* expressly "d[id] not turn upon the presumption and burden of proof questions," unlike Petitioner's argument here. *Id.* at 1136. Consequently, the Court must deny Grounds Three and Four.

### 4.3    Grounds One and Two

Ground One involves Petitioner's claim that, because he was "acquitted" of first- and second- degree intentional homicide, there was insufficient evidence to support a conviction of first-degree reckless homicide. In other words, he argues that "because he acted in a manner that was practically certain to kill McGowan, the State failed to prove the elements of first-degree reckless homicide." ECF No. 30-9 at 5. Ground Two

Case 2:16-cv-00745-JPS   Filed 09/26/22   Page 18 of 29   Document 50

involves Petitioner's claim that because the jury did not convict on first-degree intentional homicide, it necessarily was not persuaded that the State negated self-defense beyond a reasonable doubt. These arguments, in large part, have already been addressed in this Order. Nonetheless, the Court will briefly readdress them.

Upon considering the claims underlying Grounds One and Two on direct appeal, the Wisconsin Court of Appeals applied *State v. Poellinger*, 451 N.W.2d 752 (Wis. 1990), which holds that a reviewing court cannot reverse a conviction on the basis of insufficient evidence "unless the evidence, viewed most favorably to the [S]tate and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." ECF No. 30-9 at 5 (quoting *Poellinger*, 451 N.W.2d at 758). Although the Wisconsin Court of Appeals applied state law, the Court cannot determine that the application was sufficiently independent from federal law to preclude federal habeas review. Thus, the Court assesses whether the Wisconsin Court of Appeals' decision "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1–2). In this instance, the applicable United States Supreme Court precedent is in lockstep; a reviewing court cannot overturn a conviction for insufficiency of the evidence unless "the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal." *Lockhart v. Nelson*, 488 U.S. 33, 39 (1988).

Here, as already explained above in Section 4.1, applying the elements test, the lesser offense of first-degree reckless homicide is included within the offense of first-degree intentional homicide, thus permitting jury

instructions as to both. As the United States Supreme Court instructs, once the facts of a killing are before the jury, it is for the jury to determine the defendant's state of mind. *Stevenson*, 162 U.S. at 320. Here, as the Wisconsin Court of Appeals observed, Petitioner admitted that he did not intend to kill McGowan; he attempted to halt him. ECF No. 30-9 at 6. When McGowan did not stop, Petitioner fired at McGowan using his non-dominant hand, which he testified he did because "he never intended to actually use the gun." *Id.* Petitioner further testified that he did not have time to aim the gun, and that he was unsure whether the bullets were actually hitting McGowan. *Id.* The Court determines that the Wisconsin Court of Appeals' holding that, on these facts, a reasonable jury could find that Petitioner possessed the requisite mindset of criminal recklessness and utter disregard for human life to convict under Wis. Stat. § 940.02, was not contrary to clearly established federal law.

Similarly, as to Ground Two, the Court has already explained that there is no constitutional requirement for a state to disprove an affirmative defense, such as self-defense, beyond a reasonable doubt. *See supra* Section 4.2. Moreover, Petitioner's argument regarding the inferences attributed to Wisconsin's homicide statutes relies on a case that has been overruled, and an outdated statutory code. ECF No. 41-2 at 51 (citing *State v. Harp*, 443 N.W.2d 38, 46 (Wis. Ct. App. 1989), *overruled by State v. Camacho*, 501 N.W.2d 380 (Wis. 1993)). Consequently, the Court is constrained to deny Grounds One and Two.

### 4.4    Grounds Seven and Eight

As to Ground Seven, Petitioner raises myriad bases upon which he alleges that his trial counsel was ineffective. First, Petitioner argues that his trial counsel failed to object during the State's closing and rebuttal

arguments, in which the State apparently "told jurors that [Petitioner] lied to them about the only evidence supporting [Petitioner's] only defense." ECF No. 41-2 at 69. Second, Petitioner contends that his trial counsel failed to investigate and introduce McGowan's jacket into evidence, which would have proved, *inter alia*, certain witnesses' testimony as perjury. *Id.* at 79–81. Third, Petitioner avers that his trial counsel erred by "allowing" a witness to plead his Fifth Amendment right against self-incrimination before the jury. *Id.* at 89. In support of this contention, Petitioner additionally raises a variety of garbled arguments regarding his trial counsel's failure to object to purported tampering of the same witness. *Id.* at 89. Fourth, Petitioner argues that his trial counsel was ineffective for failing to object to the jury instructions. *Id.* at 90. Fifth, Petitioner alleges that further investigation from his trial counsel would have permitted additional other-act testimony as to McGowan. *Id.* at 92–93. Finally, Petitioner contends that his trial counsel was ineffective for failing to raise certain claims subject to the instant amended petition. *Id.* at 93.

The Wisconsin Court of Appeals heard these claims on Petitioner's first pro se postconviction motion; they were not raised on his direct appeal. ECF No. 30-9; ECF No. 30-18. The Wisconsin Court of Appeals held, under *Escalona-Romero*, that it was "not persuaded that any of these claims are clearly stronger than the issues actually raised by postconviction counsel," and declined to address the claims any further. ECF No. 30-18 at 4, 7 (citing *Escalona*, 517 N.W.2d 157; *Romero-Georgana*, 849 N.W.2d 668). Unlike Grounds Five and Six, the Wisconsin Court of Appeals did not conduct any independent determination as to the merits, and the claims are not available for federal habeas review. In other words, the Wisconsin Court of Appeals affirmed denial of the claims solely on independent and adequate state

procedural grounds; there was simply no merits review that may be sufficiently intertwined with federal law to allow for federal habeas review, as there was with the due process analysis applicable to Grounds Five and Six. *See supra* Section 4.1.

The same is true as to Ground Eight, which is Petitioner's claim that his postconviction counsel was ineffective for not raising many of Petitioner's instant arguments on direct appeal. As with Ground Seven, the Wisconsin Court of Appeals denied the claim on Petitioner's first pro se postconviction motion, holding that, because it determined that none of the issues raised in the first pro se postconviction motion were "clearly stronger," within the purview of *Escalona-Romero*, than the issues postconviction counsel *did* raise on direct appeal, the claim was necessarily meritless. ECF No. 30-18 at 4, 7. Consequently, the Wisconsin Court of Appeals, as with Ground Seven, affirmed denial on the basis of independent and adequate state procedural grounds without any consideration of the merits. Federal habeas review is thus unavailable as to Ground Eight.

The United States Supreme Court has held, however, that where an ineffective assistance of counsel claim is procedurally defaulted and/or barred due to actions by appointed counsel during a stage of the proceedings where a defendant has a constitutional right to appointed counsel, the default and/or bar may be excused. *See Coleman v. Thompson*, 501 U.S. 722, 755–56 (1991); *see also Martinez v. Ryan*, 566 U.S. 1, 11 (2012). An indigent criminal defendant has a right to appointed counsel during trial and during his first appeal as of right in state court. *Coleman*, 501 U.S. at 755. Thus, the Court will excuse Petitioner's procedural default and/or bar as to Grounds Seven and Eight. Nonetheless, Petitioner's claims of

ineffective assistance of trial and postconviction counsel are an uneasy fit within the United States Supreme Court's exacting standard for ineffective assistance of counsel claims. As the Seventh Circuit explains:

> A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687–88 . . . (1984)[.]
>
> To satisfy the first element of the *Strickland* test, appellant must direct the Court to specific acts or omissions by his counsel. In that context, the Court considers whether in light of all the circumstances counsel's performance was outside the wide range of professionally competent assistance. The Court's assessment of counsel's performance is "highly deferential[,] . . . indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" [*Id.* at 689.] . . .
>
> To satisfy the second *Strickland* element, appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome.

*Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013) (citations and quotations omitted).

The Court cannot say that all fair-minded jurists would agree that a *Strickland* violation occurred. At the outset, as to many of the bases that he alleges to support his claim of ineffective assistance of his trial counsel, Petitioner fails to state at all that, but for the alleged errors, there is a reasonable probability that the result of the proceedings would be different. For those bases that Petitioner does argue a reasonable probability of a

different outcome, the argument is baldly stated following a jumbled, stream-of-consciousness recitation of Petitioner's speculation, coupled with inapposite legal authority.

Even so, the Court determines that trial counsel's performance as to the various bases Petitioner raises was not constitutionally defective, and/or did not create a reasonable probability that the outcome would have been different. First, failing to object during a closing argument is not a constitutional deficiency. "Our theory of trial relies upon the ability of a jury to follow instructions." *Opper v. United States*, 348 U.S. 84, 95 (1954). Further, following the close of evidence, the jury has "fresh in its mind the . . . evidence" presented by the parties; consequently, the United States Supreme Court has held that it "do[es] not see how a less descriptive closing argument with fewer disparaging comments . . . could have made a significant difference." *Smith v. Spisak*, 488 U.S. 139, 154–55 (2010).

Second, trial counsel's decision not to introduce McGowan's jacket into evidence does not reach a level below objectively reasonable standards for representation, nor is there a reasonable probability that introducing the jacket would have resulted in a different outcome. Petitioner argues that introduction of the jacket into evidence would have further credited his testimony that McGowan was wearing a jacket at the time he was shot (and, therefore, that Petitioner's as-testified belief that McGowan was hiding a gun in his jacket and reaching for one was reasonable), as well as discredited an eyewitness's testimony that the jacket was on the ground. ECF No. 41-2 at 100. Petitioner further contends that the jacket itself would support his version of events because it has bullet holes in it; moreover, those bullet holes would corroborate that McGowan was shot from the front while approaching Petitioner, and not from the back. *Id.* at 75, 80.

Case 2:16-cv-00745-JPS   Filed 09/26/22   Page 24 of 29   Document 50

The record belies Petitioner's assertions. First, as Petitioner notes, the medical examiner testified that some of the bullets entered McGowan from the front, while others entered from the back. ECF No. 34-4 at 108 (one gunshot wound entered the "front of [McGowan's] upper arm like below the shoulder in the front"); *Id.* at 130 (another gunshot wound had a trajectory from "back to front and left to right and upward"). In line with the medical examiner's testimony, Petitioner testified that he shot McGowan from the front and the State proffered testimony regarding shots from the back. ECF No. 41-2 at 80. The Court cannot see how the jacket itself could provide any further clarification, or alter the jury's factfinding, as to the direction of the shots. Similarly, Petitioner testified that McGowan dropped the jacket to the ground, later picking it back up, which the jury as factfinder was certainly capable of comparing to another witness's testimony that McGowan dropped the jacket at one point. *Compare* ECF No. 30-31 at 114, *with* ECF No. 30-35 at 22. At any rate, in the hundreds of pages of trial testimony before it, the Court has discerned only scant and insignificant references to the jacket. Any relevant information that could be gleaned from the jacket was already before the jury; moreover, trial counsel may well have strategically determined that showing the jury the victim's bullet hole-pierced clothing would cause more harm than good to Petitioner's defense.

Next, trial counsel's decision not to object when a witness pleaded his Fifth Amendment right against self-incrimination is not constitutionally defective. Such a decision could rise to the level of ineffective assistance of counsel if it violates a defendant's Sixth Amendment right to confront and cross-examine a witness. *See, e.g.*, *Bates v. Frakes*, No. 18-CV-322, 2019 WL 2764261, at *16 (D. Neb. July 2, 2019), *review denied by* 2019 WL 7761576 (8th

Cir. Oct. 17, 2019). However, Petitioner does not raise that argument before the Court, nor did he raise it before the state courts. Additionally, the witness underlying the claim did not end up testifying at all beyond invoking his right against self-incrimination. ECF No. 30-33 at 118. Therefore, there was no constitutional infirmity as to Petitioner's ability to cross-examine him at trial and trial counsel's conduct as to this witness was not ineffective.

Trial counsel further was not ineffective for failing to object to the jury instructions. For the reasons described above, the jury instructions were not constitutionally erroneous. *See supra* Section 4.2. Nor was trial counsel ineffective for failing to raise the other claims subject to the instant amended petition, as the Court has determined that those claims lack merit.[4] Finally, the Court does not find constitutional error in trial counsel's failure to further investigate other-act evidence. Petitioner's trial counsel succeeded at the hearing on admission of other-act evidence. The jury heard testimony that McGowan had previously killed two men, as well as testimony from Patterson that he had previously witnessed McGowan kill a man. ECF No. 30-9 at 3; ECF No. 46 at 27–28. The Court is not persuaded that testimony regarding additional other-act killings would have altered the outcome. For all of these reasons, the Court is obliged to deny Grounds Seven and Eight.

---

[4] For the same reason, upon consideration of Petitioner's claim regarding postconviction counsel and in light of all attendant circumstances, the Court cannot find that postconviction counsel was ineffective for failing to raise certain claims on direct appeal, as the Court has deemed those same claims meritless in this Order.

## 5. CONCLUSION

For the reasons stated above, Petitioner's amended petition for writ of habeas corpus, ECF No. 15, will be denied. Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted).

When the Court has denied relief on procedural grounds, as the Court does as to certain Grounds here, Petitioner must show that jurists of reason would find it debatable both that the "petition states a valid claim of the denial of a constitutional right" and that "the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As the Court discussed above, no reasonable jurists could debate whether the amended petition has merit, on either substantive or procedural grounds. The Court must, therefore, deny Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner Brian A. Patterson's motion for leave to file an oversized moving brief, ECF No. 41, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Petitioner Brian A. Patterson's emergency motion for immediate release on personal recognizance bond, ECF No. 42, be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Respondent Michael Meisner's motions for extensions of time, ECF Nos. 44 and 45, be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Petitioner Brian A. Patterson's motion for an extension of time, ECF No. 47, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Petitioner Brian A. Patterson's motion for leave to file an oversized reply brief, ECF No. 48, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Petitioner Brian A. Patterson's amended petition for a writ of habeas corpus, ECF No. 15, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner Brian A. Patterson's amended petition, ECF No. 15, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 26th day of September, 2022.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.